UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
KAREEM JOYNER,

                        Petitioner,

     -against-

                                              **MEMORANDUM & ORDER**

ROBERT E. ERCOLE,                                  06 CV 0486 (RJD)(JO)

                        Respondent.
-----------------------------------------------------------------X

DEARIE, Chief Judge.

    On August 16, 2010, pursuant to an order of this Court extending his time to do so, petitioner Kareem Joyner filed objections to the Report and Recommendation of Magistrate Judge James Orenstein, issued April 23, 2010, recommending denial of petitioner's application for habeas relief under 28 U.S.C.§ 2254 (the "Recommendation" or the "R & R"). For the reasons set forth below, the Court adopts Magistrate Orenstein's Recommendation in its entirety, denies the application for habeas relief, and dismisses the petition.

**I.    STANDARD OF REVIEW**

    Federal Rule of Civil Procedure 72(b)(3) provides that, when resolving objections to the report and recommendation of a magistrate judge, the Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to" and then either "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). <u>Accord</u> 28 U.S.C. § 636 ("[a] judge of the court shall make a de novo determination of those portions of the report . . . to which

objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge" or "may also receive further evidence or recommit the matter to the magistrate judge with instructions").

As the Supreme Court instructed some time ago,

> It should be clear that . . . the statute calls for a de novo determination, not a de novo hearing. We find nothing in the legislative history of the statute to support the contention that the judge is required to rehear the contested testimony in order to carry out the statutory command to make the required "determination."

United States v. Raddatz, 447 U.S. 667, 674 (1980). Indeed, the phrase "de novo determination" in section 636 "permit[s] whatever reliance a district judge, in the exercise of sound judicial discretion, ch[ooses] to place on a magistrate's proposed findings and recommendation," provided the district court remains the ultimate decision-maker. Raddatz, 447 U.S. at 676.

## II.   PETITIONER'S OBJECTIONS

### A.   The Right to Be Present

Petitioner's narrow claim is that the Appellate Division unreasonably applied what he concedes is the correct controlling law, Illinois v. Allen, 397 U.S. 337 (1970), when concluding that his removal from the courtroom was not in violation of his constitutional rights.

In my de novo review I am in agreement with Magistrate Orenstein's analysis, which I adopt here. As petitioner himself recognizes, Allen holds that "a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the

courtroom." Id., 397 U.S. at 343. Allen also recognizes that "trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case. . . [and n]o one formula for maintaining the appropriate courtroom atmosphere will be best in all situations." Id.

Petitioner concedes that he engaged in a pattern of disruptive outbursts and that the hearing court acted appropriately, under Allen, in having him removed from the proceedings. His complaint is that the trial court failed to offer him an opportunity, post-removal, to "reclaim" his right to be present by "inquir[ing] whether or not he would promise to conduct himself properly." Obj. at p. 3.

When rejecting this claim on petitioner's direct appeal, the Appellate Division, citing Allen, recognized that "[a] defendant's right to be present during trial is not absolute" and that "[t]he defendant may be removed from the courtroom if, after being warned by the trial court, the disruptive conduct continues." People v. Joyner, 303 A.D.2d 421 (2d Dep't 2003). The appellate court concluded that "[u]nder the circumstances of this case, the court's removal of [petitioner] from the courtroom after repeated warnings and renewed opportunities to be present, was proper." Id.

The Appellate Division, I conclude, did not unreasonably apply Allen within the meaning of the habeas statute.[1] To be sure, the Supreme Court recognizes that "[o]nce lost, the right to be

---

[1] The applicable standards for habeas relief are well established and not at issue here. See 28 U.S.C. § 2254(d) ("[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States "); Williams v. Taylor, 529 U.S. at 409, 413 ("unreasonable" in section 2254 means "objectively unreasonable");

3

present can, of course, be reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings." Allen, 397 U.S. at 343. But petitioner consistently showed himself to be resolutely *un*willing to conduct himself in the manner that might have allowed him to return, despite repeated warnings about the consequences of his conduct.

Indeed, as the transcripts of the state court proceedings make abundantly clear, this is not a case of a troubled defendant who *could* not control himself but rather of one who determinedly *would* not. Magistrate Orenstein comprehensively chronicles this protracted chapter of the case, see R&R at 4-9, so I need not re-state the minutiae of each outburst. But I emphasize, as especially salient for Allen purposes, the fact that petitioner typically punctuated his verbal outbursts by *removing himself* from the courtroom, by threatening to do so, and by otherwise conveying his willingness to forego his right to be present, and that on each of these occasions he was amply warned about his options and their consequences. Each time petitioner threatened to or actually did leave the courtroom and then remained or returned, he was exercising the opportunity he contends was denied him to "reclaim" his right to be present. It was entirely reasonable for the Appellate Division to have concluded that the trial court did not abuse the broad discretion it was is afforded under Allen in arriving at the following realizations: first, by the time of his final in-court outburst, petitioner was fully aware of the consequences of his behavior and made a knowing choice to engage in it, thereby bringing to fruition the strategy of protest he had been pursuing from the outset of the proceedings; and second, further engagement with petitioner on the subject would have been futile.

---

Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) ("unreasonable" in section 2254 means "[s]ome increment of incorrectness beyond error").

### B. The Right to Testify

In his objections, petitioner argues that because the trial court was focusing on the disruptive aspect of his behavior when ordering that he be removed from the courtroom, it failed to "give[ a] second thought [ ] to the importance of" other rights that his absence from the courtroom would necessarily impact, including his right to testify.

Petitioner's right to testify, however, was not ignored. At the time removal was ordered, petitioner's standby counsel interposed an objection based on the right to testify, alerting the court to the fact that petitioner might in fact elect to testify in support of his claim of self-defense. The trial court ruled that petitioner had "forfeited his right to testify by conducting himself in such a manner."

In undertaking a de novo determination, I begin with the fact that petitioner presented the claim that he was denied his right to testify in a pro se brief that he filed, with the Appellate Division's permission, as a supplement to the principal brief filed on his behalf by Appellate Advocates. Although the Appellate Division decision affirming petitioner's conviction does not make specific reference to the right-to-testify claim, the decision does contain language that is routinely understood to be an adjudication on the merits for purposes of section 2254. See Joyner, 303 A.D.2d at 421 (petitioner's "remaining contentions" are "either unpreserved or without merit"); Ryan v. Miller, 303 F.3d 231, 245-46 (2d Cir. 2002) (such silent, alternative adjudication counts as a determination on the merits for purposes of AEDPA). The narrow question I must decide, therefore, is whether the Appellate Division's silent adjudication is contrary to or an unreasonable application of the holdings of any Supreme Court case.

The answer is a straightforward no. As the R&R observes, there is no Supreme Court case

addressing the question of whether the right to testify may be "forfeited" (as opposed to waived). I further conclude that, in its silent adjudication of petitioner's right-to-testify claim, the Appellate Division did not unreasonably apply the seminal Supreme Court right-to-testify decision, Rock v. Arkansas, 483 U.S. 44 (1987). In Rock, the Supreme Court reiterated that the fundamental right to testify "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." 483 U.S. at 55 (internal quotation and citation omitted). It would not have been an unreasonably application of Rock v. Arkansas for the Appellate Division to have concluded that the disruptive behavior that allows the right to be present to be forfeited under Illinois v. Allen would also qualify, on the record here, as a "legitimate interest" to which the right to testify may bow under Rock v Arkansas.

C. **The Right of Self-Representation**

Petitioner's narrow claim under Faretta v. California, 422 U.S. 806 (1975) is that he was excluded from a single, off-the-record sidebar conference in which the trial judge, the prosecutor and his standby counsel participated. The sidebar occurred during a pre-trial proceeding at which petitioner, pursuant to an earlier ruling of the court, had been representing himself.

Petitioner's specific quarrel with the R&R is that he believes Magistrate Orenstein should have held an evidentiary hearing to ascertain what was stated during the sidebar before recommending that I reject the claim as a basis for habeas relief. Magistrate Orenstein recognized that, because petitioner was already representing himself for Faretta purposes, "it was improper to exclude him from participating" in that sidebar, and that federal review of the claim "would [have been] better served had the state court explained its concerns on the record." Nevertheless,

6

Magistrate Orenstein concluded that the single incident, occurring well before a jury was empanelled, does not warrant issuance of the writ.

In my de novo determination, the question presented is whether the Appellate Division's rejection of petitioner's Faretta claim is an unreasonable application of Faretta or its Supreme Court progeny.[2] In the standby-counsel context, the relevant post-Faretta Supreme Court decision is McKaskle v. Wiggins, 465 U.S. 168, 174 (1984). Recognizing that unsolicited participation by standby counsel does not categorically violate a defendant's right of self-representation, the Court announced the "limits on the extent of standby counsel's unsolicited participation" that "the Faretta right must impose." McKaskle, 465 U.S. at 176-77. They are:

> First, the pro se defendant is entitled to preserve actual control over the case he chooses to present to the jury. This is the core of the Faretta right. If standby counsel's participation over the defendant's objection effectively allows counsel to make or substantially interfere with any significant tactical decisions, or to control the questioning of witnesses, or to speak instead of the defendant on any matter of importance, the Faretta right is eroded.
>
> Second, participation by standby counsel without the defendant's consent should not be allowed to destroy the jury's perception that the defendant is representing himself. The defendant's appearance in the status of one conducting his own defense is important in a criminal trial, since the right to appear pro se exists to affirm the accused's individual dignity and autonomy.... From the jury's perspective, the message conveyed by the defense may depend as much on the messenger as on the message itself. From the defendant's own point of view, the right to appear pro se can lose much of its importance if only the lawyers in the courtroom know that the right is being exercised.

---

[2] The Appellate Division did not expressly address petitioner's Faretta claim in its decision affirming his conviction. The claim was fully presented in the pro se brief petitioner filed with permission, so I appropriately consider the Faretta claim to be among those "remaining contentions" that the Appellate Division found to be "either unpreserved or without merit," and treat that silent, alternative adjudication as determination on the merits for section 2254 purposes. See Ryan, 303 F.3d at 245-46.

Id. at 178-79.

Because the incident in question is a single pre-trial sidebar conference, I conclude, consistent with the R&R, that it would not have been an unreasonable application of McKaskle for the Appellate Division to have concluded that petitioner did not suffer an unconstitutional deprivation of the right that Faretta recognizes. To be sure, the sidebar does mark an interruption in petitioner's role as his own counsel. See McKaskle, 465 U.S. at 174 ("[t]he pro se defendant must be allowed . . . to address the court and the jury at appropriate points"). Nevertheless, the hiatus was fleeting and thus had no effect on the core concerns that the Faretta right protects. There was no tainting of the "jury's perception that [petitioner was] representing himself," McKaskle, 465 U.S. at 178, because the jury was not yet empanelled, and petitioner suffered no discernible loss of "actual control over the case." Id. To the contrary, following the conference petitioner persisted, no less so than before the sidebar occurred, in his pattern of disruptive protestations, so it is clear that the sidebar caused no material diminution in petitioner's role as master of his own destiny. See McKaskle, 475 U.S. at 177 ("[i]n determining whether a defendant's Faretta rights have been respected, the primary focus must be on whether the defendant had a fair chance to present his case in his own way"). For these same reasons, I find no merit in petitioner's contention that Magistrate Orenstein should have held an evidentiary hearing to explore what was said during the sidebar. See Schriro v. Landrigan, 550 U.S. 465, 474 (2007). (evidentiary hearing not required if record otherwise precludes habeas relief).

**D. The Alleged Ineffective Assistance of Trial Counsel**

Petitioner argues that his trial counsel was ineffective because he allegedly failed to request that the proceedings be electronically transmitted to him in the courthouse holding cell and failed

8

to communicate with him during the trial. Petitioner raised these claims in state court in a motion to vacate pursuant to section 440 of the New York Criminal Procedure Law, which the trial court denied in a detailed, fact-intensive twenty-six page decision dated September 8, 2005 (the "440 Decision").[3]

In recommending that this Court *not* grant habeas relief on the basis of the ineffectiveness claim, Magistrate Orenstein travels essentially the same analytical route that I would under de novo review. Two features of the analysis warrant re-emphasis.

First, the 440 Decision is principally a *factual* decision. It is also especially comprehensive. Many of its particular factual findings are express assessments of the bona fides of petitioner's assertions and of his credibility; others carry implicit assessments of credibility reflective of the trial court's sustained first-hand experience with a disruptive defendant. I may not disturb these findings except in the most limited of circumstances; as the habeas statute provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence

28 U.S.C. § 2254(e)(1).

Likewise,

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

---

[3] The Appellate Division denied petitioner's application for leave to appeal the 440 Decision. See Dkt. 1: 2 at p. 34.

> . . .
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceedings.

28 U.S.C. § 2254(d)(2).

Petitioner lodges his disputes with the state court's findings but does not direct me to any evidence that the 440 court might have overlooked, present any newly discovered evidence, nor otherwise provide a basis for me to disturb the findings.[4] For example, with respect to petitioner's claim that counsel did not inform him of what was happening in the courtroom in his absence, the 440 court recognized that the record was less than ideal, observing that "[t]he Department of Correctional Services' records of prison visitors in the courthouse jail were destroyed due to asbestos contamination" and, apparently crediting petitioner's chronicle of his efforts to locate his former counsel, further noted that "defense counsel cannot be located to rebut the factual allegations." 440 Decision at 19. Nevertheless, the court, in reliance on the trial transcript, noted that "[d]uring much of the proceedings, defense counsel stated that [petitioner] would not cooperate, assist, or speak with him," and concluded that "[t]his indicates an attempt to speak to the defendant, but that the defendant was unwilling to speak to the defense counsel." Id. at 6, 20. I conclude that this finding, based on the available evidence, was reasonable.

Likewise, with respect to petitioner's claim that counsel failed to request audio or video feeds of the trial into petitioner's cell, the 440 court agreed that "[a]t no time did defense counsel

---

[4] Neither the Supreme Court nor the Second Circuit has yet resolved whether 2254(d)(2) and 2254(e)(1) embody different standards or considerations. See Wood v.Allen, 558 U.S. ----, 130 S. Ct. 841, 848-49 (2010); Green v. Travis, 414 F.3d 288, 299 n. 6 (2d Cir. 2005). See generally Watson v. Ricks, 05 CV 7288 (WHP), 2010 WL 2346614, *4 (S.D.N.Y. June 2, 2010) (collecting cases). I need not make that determination now as petitioner does not meet either standard.

request that the pleadings be electronically broadcast to the defendant in the court's prison cell," but noted that "at the time of [petitioner's] trial, it was known that Kings County did not have the funds or the facilities to electronically transmit proceedings to a courthouse cell." Id. at 6, 18. The 440 court therefore concluded that counsel was not ineffective for failing to make a futile request. Id. Nothing in the state court's analysis or conclusion suggests habeas-level unreasonableness.[5]

Second, to the extent petitioner's claim invites consideration as an "unreasonable application" claim, I also reject it. There is no dispute that the state court applied the correct legal standard,[6] so the sole question before me is whether the state court's application of Strickland v.

---

[5] Both Justice Brennan's concurrence in Illinois v. Allen and the Local Rules of the Appellate Division, Second Department, strongly encourage judges who remove disruptive defendants to attempt to mitigate the consequences of removal. See Allen, 397 U.S. at 351 ("I would add only that when a defendant is excluded from his trial, the court should make reasonable efforts to enable him to communicate with his attorney and, if possible, to keep apprised of the progress of his trial. Once the court has removed the contumacious defendant, it is not weakness to mitigate the disadvantages of his expulsion as far as technologically possible in the circumstances") (Brennan, J., *concurring*); see also 22 N.Y.C.R.R. §702.3 ("[i]f a defendant shall have been removed from the courtroom [on the grounds of disruptiveness], the trial judge shall make reasonable efforts to establish methods of communication linking the defendant with the courtroom while his trial is in progress"). Nevertheless, I am aware of no authority recognizing a constitutional obligation to do so, and one federal circuit court has expressly rejected the notion that Allen could be read as requiring such an accommodation. See Bell v . Evatt, 72 F.3d 421, 432 (4th Cir. 1995), cert. denied, 518 U.S. 1009 (1996). Accord, U.S. v. Solomon, 95 Cr 154 (LAP), 1997 WL 232523, *7 (S.D.N.Y. May 8, 1997). But see Boothe v. Sup't Woodbourne., 506 F. Supp. 1337, 1338-39 (E.D.N.Y. 1981) (Weinstein, C.J.) (because a defendant removed under Allen because of his disruptiveness would have been "enabled to participate in his trial from outside the courtroom" by use of "relatively inexpensive monitoring equipment," the state's "failure to supply the trial court with [the necessary] facilities" constitutes a denial of due process), rev'd on other grounds, 656 F.2d 27 (2d Cir. 1981).

[6] Although the question of whether the correct law was applied does not appear to be in dispute, I note the following: earlier this year, the Second Circuit held that "the New York 'meaningful representation' standard [for ineffectiveness of counsel claims] is not contrary to the Strickland standard," Rosario v. Ercole, 601 F.3d 118, 124 (2d Cir. 2010) (internal citation omitted), but at the same time recognized the concern of some jurists that "there may be applications of the New York standard that could be in tension with the prejudice standard in

11

Washington was unreasonable within the meaning of section 2254. Appropriately confining my remarks to prejudice analysis, see Strickland, 466 U.S. at 494, I conclude that Strickland was not unreasonably applied.

As the state court found and as Magistrate Orenstein reports, petitioner has not shown that any of the alleged errors of counsel he describes would have altered the outcome of his trial. Petitioner's principal objection on this point is that, "[i]t defies reason that [standby counsel] would not seek to preserve some kind of communication with [petitioner];" he further argues that prejudice was "inherent" because, had he been able to avail himself of a mode of live-time communication, petitioner "could have alerted counsel to falsehoods in witnesses' testimony, inconsistencies in the prosecution's case, request if any plea bargains were available, thereby entering plea for perhaps a lesser charge or sentence, or asked the court to return to the courtroom." Obj. at 7, 8. This inventory of what-if's, however, is far too speculative to establish prejudice under Strickland. See id., 466 U.S. at 693, 94 (prejudice requires showing a "reasonable probability" that the result of the trial would have been different; "some conceivable effect" on the proceedings is not enough).[7]

---

Strickland." Id. (internal citation omitted). The 440 Decision, however, expresses the trial judge's view at that time (*i.e.*, in 2005) that the "federal and state standards for determining ineffective assistance of counsel are different" in that "[t]he federal standard focuses on the 'outcome of the proceeding'" whereas "the state standard focuses on the 'fairness of the process as a whole.'" 440 Decision at p. 15 (internal citations omitted). The trial court proceeded, however, to analyze petitioner's claim under both state and federal standards. Id. at 15 et seq.

[7] Petitioner's ineffectiveness claim has a third branch, namely, that counsel was ineffective because he failed to call certain witnesses that petitioner claims would have supported his claim of self-defense. The 440 Court concluded that this branch was procedurally barred under New York law because petitioner failed to supply a sworn affidavit from the putative witnesses, and in any event, found the claim without merit because all but one of the allegedly uncalled witnesses did testify, and because during the trial, counsel spoke on the record about reasons for not calling certain other witnesses that were under consideration. 440 Decision at 20-21. Petitioner does

Third, subsumed within petitioner's arguments about "inherent prejudice" is what appears to be a separate Faretta claim. Because Faretta, unlike Strickland, does not condition relief on a showing of "prejudice" from the claimed constitutional violation, see McKaskle, 465 U.S. at 177, n.8 ("The [Faretta] right is either respected or denied; its deprivation cannot be harmless" and "its denial is not amendable to 'harmless error' analysis"), prudence requires that I recognize and afford brief separate treatment to the claim. As I understand his papers, petitioner is claiming that, because he was representing himself for Faretta purposes at the time the court ordered his removal from the courtroom, an alleged byproduct of his removal was that "his right to proceed pro se was wrested from him" and "he was forced to [e]ndure an assignment of counsel that he did not want." Obj. at 8. To the extent this is petitioner's claim, it is not clear whether it has been exhausted, but assuming it were properly before me I would find it meritless, whether under a deferential or de novo standard of review, because Faretta itself speaks precisely to what occurred at petitioner's trial: citing Illinois v. Allen, the Court in Faretta explains that "the trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct." Faretta, 422 U.S. at 834, n. 46.

E.  The Alleged Ineffective Assistance of Appellate Counsel

Based upon my de novo review, I find both branches of petitioner's ineffective assistance of appellate counsel claim utterly frivolous, and because petitioner's objection to the R&R merely restate arguments made in his initial habeas papers, I have nothing material to add to Magistrate Orenstein's analysis. Petitioner's concern that the language appellate counsel used in the petition

---

not press this claim in his objections.

for leave to appeal to the New York Court of Appeals did not adequately place the broadest number of possible issues before the Court or to preserve those issues for habeas review, is entirely unfounded. As Magistrate Orenstein recognized, the leave petition employed the standard language understood to preserve *all* the claims raised in *all* the cited briefs. The other branch of the claim readily fails to satisfy the prejudice prong of <u>Strickland</u>. Petitioner complains that appellate counsel was ineffective for failing to raise on appeal the claims that petitioner himself raised in his pro se supplemental brief. Petitioner was not prejudiced, however, because petitioner's brief was filed with the Appellate Division's permission, and because it is clear that the Appellate Division did consider and reject the claims raised in that submission. <u>See</u> <u>Joyner</u>, 303 A.D.2d at 421 ("The defendant's remaining contentions, including those raised in his supplemental pro se brief, are either unpreserved for appellate review or without merit").

**F.    Vagueness**

On his direct appeal and in his petition, petitioner argued that the distinction between second-degree "depraved indifference" murder as defined by N.Y. Penal Law § 125.25(2) and second-degree "reckless" manslaughter as defined by N.Y. Penal Law § 125.15 (1) is unconstitutionally vague and that the jury, therefore, should not have been allowed to consider both crimes. The Appellate Division rejected the claim, <u>see</u> <u>Joyner</u>, 755 N.Y.S.2d at 867, Magistrate Orenstein recommended that I do the same, <u>see</u> R&R at 23-25, and plaintiff's objections are silent on the matter. I am in full agreement with Magistrate Orenstein's recommendation, which is based on a review of the numerous decisions rejecting essentially the same claim as petitioner's, and reviewing the matter de novo I would supplement Magistrate Orenstein's analysis with a Second Circuit decision, issued after he issued his recommendations,

that decides the issue similarly. See <u>Mannix v. Philips</u>, --F.3d.--, 2010 WL 3387898 at *10, 12 (2d Cir. Aug. 30, 2010).

**G.     Sentencing**

Petitioner was convicted of one count of murder in the second degree, a class A-1 felony under New York law.   See N.Y. Penal Law § 125.25[1].   For an A-1 felony, New York law requires that the sentence be indeterminate, with a maximum term of life imprisonment.   N.Y. Penal Law § 70.10.   Petitioner was sentenced to an indeterminate term of 25 years to life.   He claims, however, that the sentence violates due process because the sentencing judge relied on material misinformation of a constitutional magnitude within the meaning of <u>United States v. Tucker</u>, 404 U.S. 443 (1972).

Consistent with the recommendations of Magistrate Orenstein, I conclude that no such violation occurred, relying principally on the statements of the sentencing court and the findings of the 440 court, which essentially speak for themselves:

> At sentencing, the court stated:
>
>> This instant offense represents the defendant's third known adult conviction.   The defendant has one 1994 arrest in Utica, New York, for which a bench warrant was issued on July 20 of 1994.   It appears to be still outstanding.
>>
>> The defendant's arrest in 1993 for criminal possession of a weapon in the third degree resulted in one year incarceration on July 7 of 1997.
>>
>> In 1997, the defendant was convicted at trial under Indictment 11023 of '96 for criminal possession of a weapon in the third degree, assault in the first degree and murder in the second degree, which resulted in sentences of seven and a half to 15 years and 25 years to life.
>>
>> On April 24 of 1997, the defendant was convicted on the present

15

> offense after trial.
>
> The evidence in this case was overwhelming. Consequently, the court will sentence this defendant to a minimum of 25 years to life. And that sentence is to run consecutively with the sentence imposed under Indictment 11203 of '96.

Three years later, the Appellate Division vacated the 1996 conviction and ordered a new trial because of what it regarded as an erroneous evidentiary ruling. People v. Joyner, 284 A.D.2d 344 (2d Dep't 2001). The trial court had suppressed evidence of a lineup identification on the grounds of suggestiveness, but then, when petitioner's threats rendered the witness "unavailable," the court admitted the grand jury testimony and audiotaped interviews of the witness referring to the lineup identification of the defendant. Id., 284 A.D.2d at 345. Petitioner was not re-tried, but instead entered a plea of guilty to manslaughter in the first degree, and was sentenced to 12 years.

On petitioner's 440 motion, the court (not the same justice who sentenced petitioner) rejected the material misinformation claim, as follows:

> Given the fact that [petitioner] did in fact kill a 39-year old man [the 1996 case], that [petitioner] had a gun possession conviction, that the two homicides (this conviction and the 39-year old man's killing) were vicious acts and the defendant's behavior throughout the proceedings, there is no doubt that the sentencing court, had it known the true facts, would have sentenced the defendant to the maximum term.
>
> The court notes that if [petitioner's] motion to set aside the sentence were granted, the court could sentence him to the same sentence as originally imposed

440 Decision at 24-25.

The court therefore concluded that petitioner's sentence did not infringe his due process

16

rights. Id.

The question before me is whether the state court's adjudication of petitioner's due process claim reflects an unreasonable application of Tucker; the answer, I conclude, is no. The facts and analysis of Tucker are instructive. There, the trial court had given explicit consideration to the defendant's record of previous convictions, and it was later determined that the prior convictions were obtained in proceedings where he was unrepresented, in violation of his rights under Gideon v. Wainwright, 372 U.S. 335 (1963). The Supreme Court framed the due process inquiry as follows: "the real question here is not whether the results of the [other two] proceedings might have been different if the respondent had had counsel, but whether the sentence in the [instant] case might have been different if the sentencing judge had known that at least two of the respondent's previous convictions had been unconstitutionally obtained." Tucker, 404 U.S. at 448.

The record before me requires no guesswork on my part; the 440 Court itself squarely addressed the Tucker hypothetical question and nothing in the record suggests a basis for finding in the state court's conclusion either an "unreasonable application" of Tucker or "an unreasonable determination of the facts in light of the evidence presented" within the meaning of 28 U.S.C. § 2254(d). I should make clear that I do not agree with respondent's assertion that the sentencing court merely "recounted" petitioner's prior conviction but placed no weight on it. Resp. Aff. in Opp. at 23. To the contrary, as Magistrate Orenstein recognized, the sentencing court does "appear[] to have at least taken the past conviction into consideration in making its decision, and did in that sense rely on the fact of the past conviction," R&R at 38, which is what has triggered inquiry under Tucker. Likewise, in concluding that the state court decision reflects neither factual

nor legal "unreasonableness," I find it material that, as both the 440 court and Magistrate Orenstein observe, the sentencing judge did *not* use petitioner's prior conviction to impose a recidivist enhancement or otherwise exceed the statutory maximum for the crime of second-degree murder. See 440 Decision at 24; R&R at 38-39.[8]

In additional to concluding that petitioner's sentence did not violate due process, 440 Decision at 25, the state court also concluded that "[t]he consideration by the sentencing court of the [prior] murder conviction was harmless beyond a reasonable doubt." Id. at 24. Given the overlapping nature of the due process and harmless error inquiries, see, e.g., Dey v. Scully, 952 F. Supp. 957, 974 (E.D.N.Y. 1997), I conclude that the state court's determination of harmlessness does not reflect an unreasonable application of controlling Supreme Court law. See Brecht v. Abrahamson, 507 U.S. 619, 623 (1993) (constitutional error is harmless unless it had a "substantial and injurious effect or influence" on the outcome of the proceedings) (internal citation and quotation omitted); Fry v. Pliler 551 U.S. 112 (2007) ("in §2254 proceedings a court must assess

---

[8] I also note that my reading of one aspect of the appellate decision reversing petitioner's prior murder conviction differs from that of the 440 court. In considering whether the facts upon which petitioner was sentenced were "materially untrue," the 440 court both referred to the fact that petitioner had subsequently entered a plea of guilty to manslaughter and remarked that, "the Appellate Division's finding that there was legally sufficient evidence to convict the defendant of the homicide of a 39-year old man is also an indication that the court did not rely upon 'untrue' facts." 440 Decision at 24. That Appellate Division "finding," however, appears to refer to petitioner's assault charge, not the murder. See Joyner, 284 A.D.2d at 344-45. Our differing readings of that earlier appellate decision, however, do not undermine the 440 court's ultimate decision on the due process question. As discussed above, the critical question under Tucker is not whether the result in the earlier "reversed" proceedings would have been different but for the error causing reversal, but rather, whether the sentence in *this* case would have been different had the sentencing judge known all the facts about those prior proceedings, and the 440 Decision's clear and unconditional answer to that question is dispositive for habeas purposes. In any event, to the extent the R&R appears to rely on the fragment of the state court's decision with which I disagree, that portion of the R&R—no more than a single sentence, see R&R at 39 ("the fact that the evidence at his earlier trial had sufficed to convict him of murder")—is not adopted here.

18

the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht*, whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in *Chapman*"). Whatever incalculable influence the prior conviction may have on the mindset of the sentencing judge, the record makes clear that it did not have a "substantial and injurious effect or influence," Brecht, 507 U.S. at 623, in determining the sentence imposed.

## CONCLUSION

Having considered each of petitioner's objections to the Report and Recommendation of Magistrate Orenstein issued April 23, 2010, and having determined de novo that the petition does not present a basis for the granting of habeas relief, I adopt Magistrate Orenstein's Report and Recommendation with one modification not relevant to the disposition, see footnote 8, supra, and dismiss the petition. Because petitioner has not "made a substantial showing of the denial of a constitutional right" for purposes of Title 28 U.S.C. § 2253(c)(2), a certificate of appealability shall not issue. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith. Coppedge v. United States, 369 U.S. 438 (1962). The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: Brooklyn, New York
      November 1, 2010                    s/ Judge Raymond J. Dearie

                                            RAYMOND J. DEARIE
                                            United States District Judge